UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-cv-61263-DGP/WCT

MAKO SURGICAL CORP.,
a Delaware corporation,
ALL-OF-INNOVATION GMBH,
a German corporation,

                  Plaintiffs,

v.

BLUE BELT TECHNOLOGIES, INC.,
a Pennsylvania corporation,

                  Defendant.

_____/

**DEFENDANT BLUE BELT TECHNOLOGIES, INC.'S FIRST AMENDED ANSWER TO PLAINTIFFS' MAKO SURGICAL CORP. & ALL-OF-INNOVATION GMBH COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendant Blue Belt Technologies, Inc. ("Blue Belt"), for itself and no other party, answers as follows in response to the corresponding numbered paragraphs in Plaintiff Mako Surgical Corp.'s ("Mako") and All-of-Innovation GmbH's ("AOI") (collectively, "Plaintiffs") Complaint, dated May 30, 2014:

**AS TO "PARTIES"**

1.     Blue Belt lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 1 of the Complaint and on that basis denies the same.

2.     Blue Belt lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 2 of the Complaint and on that basis denies the same.

3.     Blue Belt admits that it is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business at 2905 Northwest Boulevard, Suite 40, Plymouth, Minnesota 55441.

## AS TO "JURISDICTION AND VENUE"

4.      Blue Belt admits that Mako purports to bring an action for patent infringement under 35 U.S.C. § 271 *et seq*. and that subject matter jurisdiction of Plaintiffs' patent infringement claim is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338, but Blue Belt denies that any Plaintiffs are entitled to any relief relating thereto.  Except as expressly admitted, Blue Belt denies the allegations of Paragraph 4 of the Complaint.

5.      Blue Belt admits that that this Court has personal jurisdiction over Blue Belt in this matter.  Except as expressly admitted, Blue Belt denies the allegations of Paragraph 5 of the Complaint.

6.      Blue Belt denies the allegations of Paragraph 6 of the Complaint.

7.      Blue Belt admits that the Southern District of Florida is a suitable venue for Plaintiffs' patent infringement claim against Blue Belt.  Except as expressly admitted, Blue Belt denies the allegations of Paragraph 7 of the Complaint.

## AS TO "BACKGROUND"

8.      Blue Belt admits that Mako markets a product and/or service called "MAKOplasty," used with respect to knee and hip arthroplasty; Blue Belt denies the remaining allegations of Paragraph 8 of the Complaint.

9.      Blue Belt lacks knowledge or information sufficient to form a belief about the truth as to the date Mako was founded or as to the number of U.S. and foreign patents and patent applications Mako has, and on that basis denies said allegations; Blue Belt denies the remaining allegations in Paragraph 9 of the Complaint.

10.     Blue Belt admits that Mako markets products and/or services called "MAKOplasty," the RIO Robotic Arm Interactive Orthopedic device, and Restoris implants in

the United States.  Blue Belt lacks knowledge or information sufficient to form a belief about the truth as to the all the specific location(s) in which these products and/or services are offered or specifically how many procedures have been performed, and denies these allegations on this basis.  Blue Belt denies the remaining allegations of Paragraph 10 of the Complaint.

11.     Blue Belt lacks knowledge or information sufficient to form a belief about the truth as to purported rankings or honors regarding Mako and/or its products and/or services, and denies these allegations on this basis.  Blue Belt denies the remaining allegations of Paragraph 11 of the Complaint.

12.     Blue Belt denies the allegations of Paragraph 12 of the Complaint.

13.     Blue Belt admits that Mako's products and/or services are sold and/or offered for sale in the United States; Blue Belt lacks knowledge or information sufficient to form a belief about the truth as to the remaining allegations of Paragraph 13 of the Complaint, and denies these allegations on this basis.

14.     Blue Belt lacks knowledge or information sufficient to form a belief about the truth as to purported rankings or honors regarding Tim Lueth and denies these allegations on this basis; Blue Belt denies the remaining allegations of Paragraph 14 of the Complaint.

15.     Blue Belt admits that on December 10, 2012, Blue Belt issued a press release announcing that it received clearance from the Food and Drug Administration ("FDA") to market its NavioPFS® orthopedic surgical system in the United States, and that NavioPFS® was approved at that time for use in Unicondylar Knee Replacement ("UKR"); Blue Belt denies the remaining allegations of Paragraph 15 of the Complaint.

16.     Blue Belt admits that its 510(k) Summary to FDA describes the NavioPFS® as "a computer-assisted orthopedic surgical navigation and surgical burring system."  Blue Belt admits

that the same document states that the NavioPFS® "uses established technologies of navigation via a passive infrared tracking camera to aid the surgeon in establishing a bone surface model for the target surgery and to plan the surgical implant location based on predefined bone landmarks and known configuration of the surgical implant"; and that it further states that the system "aids the surgeon in executing the surgical plan by using a standard off-the-shelf surgical drill motor and bur . . . which has been adapted using a tracking system."  Blue Belt admits that the same document further states that the NavioPFS® "software controls the position of the tip of the surgical bur relative to the end of a guard attached to the handpiece," and notes that "[a]s the planned surface is reached the tip of the bur is fully retracted within the guard."  Blue Belt admits that the same document states that "[a]n alternative mode of operation is speed control mode," in which "the speed of the bur is controlled and the bur stops as the planned surface is reached."  Blue Belt denies the remaining allegations of paragraph 16 of the Complaint.

17.     Paragraph 17 of the Complaint purports to quote statements by Blue Belt without offering a source for those statements.  Consequently, Blue Belt lacks knowledge or information sufficient to form a belief about the truth as to the allegations of Paragraph 17 of the Complaint, and denies these allegations on this basis.

18.     Blue Belt admits that it has sold and/or offered to sell NavioPFS® systems in the United States, and has offered to sell NavioPFS® systems in the State of Florida.  Except as expressly admitted, Blue Belt denies the allegations of Paragraph 18 of the Complaint.

19.     Blue Belt admits that Blue Belt has engaged in certain marketing activities with regard to the NavioPFS® system in the United States, including in the State of Florida.  Blue Belt admits that it offers certain informational and instructional content to actual and potential

customers for the NavioPFS® system.   Except as expressly admitted, Blue Belt denies the allegations of Paragraph 19 of the Complaint.

**AS TO "THE ASSERTED PATENT"**

20.     Blue Belt admits that U.S. Patent No. 7,346,417 (the "'417 patent") is entitled "Method and Device System for Removing Material or for Working Material," and on its face indicates that the USPTO issued it on March 18, 2008.   Blue Belt lacks knowledge or information sufficient to form a belief about the truth as to the remaining allegations of Paragraph 20 of the Complaint, and denies these allegations on this basis.

21.     Blue Belt lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 21 of the Complaint, and denies them on that basis.

**AS TO "COUNT I – INFRINGEMENT OF THE '417 PATENT"**

22.     Blue Belt incorporates its responses to and denials of the allegations contained in Paragraphs 1 through 21 of the Complaint, as if fully set forth herein.

23.     Blue Belt denies the allegations of Paragraph 23 of the Complaint.

24.     Blue Belt states that on May 29, 2014 it received a letter on Morrison & Foerster stationary alleging infringement of the '417 patent and attaching the patent, but Blue Belt denies that it infringes the '417 patent; on that basis, Blue Belt denies the allegations of Paragraph 24 of the Complaint.

25.     Blue Belt denies the allegations of Paragraph 25 of the Complaint.

**AS TO "COUNT II – INDIRECT INFRINGEMENT OF THE '417 PATENT"**

26.     Blue Belt incorporates its responses to and denials of the allegations contained in Paragraphs 1 through 25 of the Complaint, as if fully set forth herein.

27.     Blue Belt denies the allegations of Paragraph 27 of the Complaint.

28.     Blue Belt denies the allegations of Paragraph 28 of the Complaint.

29.     Blue Belt denies the allegations of Paragraph 29 of the Complaint.

30.     Blue Belt denies the allegations of Paragraph 30 of the Complaint.

31.     Blue Belt denies any other allegation of the Complaint that has not been otherwise specifically admitted or responded to.

## RESPONSE TO PLAINTIFFS' DEMAND FOR RELIEF

Blue Belt denies that Plaintiffs are entitled to any relief whatsoever, either legal or equitable, from Blue Belt or this Court.  Furthermore, Blue Belt denies that this is an exceptional case such that an award of attorney's fees to Plaintiffs or an award of enhanced damages to Plaintiffs is appropriate.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof that it would not otherwise bear, Blue Belt asserts the following separate and additional defenses, all of which are pled in the alternative, and none of which constitutes an admission that Blue Belt is in any way liable to Plaintiffs, that Plaintiffs have been or will be injured or damaged in any way, or that Plaintiffs are entitled to any relief whatsoever.

## FIRST AFFIRMATIVE DEFENSE

Blue Belt has not infringed and does not directly infringe, literally or by application of the doctrine of equivalents, either willfully or otherwise, any claim of the '417 patent, nor does Blue Belt contribute to the infringement of, or actively induce others to infringe, either literally or by application of the doctrine of equivalents, any claim of the '417 patent.

## SECOND AFFIRMATIVE DEFENSE

The claims of the '417 patent are invalid, in whole or in part, for failing to meet the requirements for patentability under United States law, including, *inter alia*, 35 U.S.C. §§ 101, 102, 103, 112, 116, and 256, and the non-statutory doctrine of obviousness-type double-patenting.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs are estopped from asserting the claims of the '417 patent against Blue Belt by reason of, among other things, statements made in the '417 patent, amendments and/or statements made in and to the United States Patent and Trademark Office during the prosecution of the application that issued as the '417 patent, prior statements made in this or any other Court, prior rulings of this or any other Court, Plaintiffs' prior representations to foreign patent authorities and/or the courts of other nations, and/or other representations made by Plaintiffs.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to any injunctive relief because, *inter alia*, any alleged injury to Plaintiffs is not immediate or irreparable, and Plaintiffs have an adequate remedy at law for any alleged injury.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from asserting the claims of the '417 patent against Blue Belt by the equitable doctrine of patent misuse.

## RESERVATION OF RIGHT TO SUPPLEMENT DEFENSES

Blue Belt reserves its right to supplement its Answer with additional defenses that are learned in the course of discovery.

## JURY DEMAND

Blue Belt demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues presented by Plaintiffs' Complaint that are so triable.

## BLUE BELT'S COUNTERCLAIMS AGAINST PLAINTIFFS

1.      Counterclaim-Plaintiff Blue Belt Technologies, Inc. ("Blue Belt") seeks a declaratory judgment that U.S. Patent No. 7,346,417 (the "'417 patent") is not infringed by Blue Belt and is invalid and unenforceable.  Blue Belt also seeks damages for and an injunction against a course of unfair and deceptive trade practices and tortious interference with business relationships undertaken by Counterclaim-Defendant Mako Surgical Corp. ("Mako"), which is intended to undermine Blue Belt's developing position in the market for knee replacement surgery.  Blue Belt further seeks damages for and an injunction against Mako's past and continuing infringement of U.S. Patent No. 6,757,582 (the "'582 patent").

## PARTIES

2.      Blue Belt is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business at 2905 Northwest Boulevard, Suite 40, Plymouth, Minnesota 55441.

3.      Upon information and belief, Mako is a corporation organized and existing under the laws of Delaware, and Mako maintains its principal place of business at 2555 Davie Road, Fort Lauderdale, Florida 33317.

8

4.      Upon information and belief, Counterclaim-Defendant All-of-Innovation GmbH ("AOI") is a corporation organized and existing under the laws of Germany, and AOI maintains its principal place of business at Gleissenweg 1, Ismaning, Bayern 85737, Germany.

**JURISDICTION**

5.      This Court has subject matter jurisdiction for the declaratory relief portion of Blue Belt's counterclaims under 28 U.S.C. §§ 2201 and 2202.

6.      This Court further has subject matter jurisdiction over Blue Belt's counterclaims under 28 U.S.C. §§ 1331, 1332(a), and 1338.

7.      This Court further has subject matter jurisdiction over Blue Belt's counterclaims arising under state law pursuant to 28 U.S.C. § 1367, because Blue Belt's state law claims are ancillary and/or pendent to Blue Belt's federal claims, and therefore supplemental jurisdiction is appropriate over such state law claims.

8.      The Court has personal jurisdiction over Mako because Mako made a general appearance in this case and maintains its headquarters in Florida.

9.      The Court has personal jurisdiction over AOI because AOI made a general appearance in this case.

10.     Venue is proper for Blue Belt's counterclaims under 28 U.S.C. §§ 1391 and 1400.

**BACKGROUND**

**Blue Belt's NavioPFS® System**

11.     Counterclaim-Plaintiff Blue Belt has developed revolutionary new technology in the field of orthopedic surgery, and is a recent entrant into that market.

12.     Blue Belt was founded in 2004 to provide a vehicle for the commercialization and public adoption of exciting new advances in robotics-assisted surgery being developed at the Robotics Institute at Carnegie Mellon University in Pittsburgh, Pennsylvania ("CMU").

13.     In November 2012, Blue Belt was approved by the United States Food and Drug Administration ("FDA") to market in the United States Blue Belt's NavioPFS® surgical system for Unicondylar Knee Replacement ("UKR," also known as partial knee replacement).

14.     Traditional UKR surgery is performed using manual instruments and is prone to human error, which can lead to inconsistent results and high revision and retreatment rates.  The NavioPFS® surgical system, by contrast, combines a planning and navigation platform that presents to the surgeon a virtual cutting guide with detailed visualization and an intelligent hand-held instrument which enables the precision of robotics in the hand of the surgeon.

15.     To bring the NavioPFS® to market, Blue Belt leveraged many years of ground-breaking research and development that began at CMU and continued at Blue Belt after its founding.  The result provides a uniquely efficient, open-architecture platform that allows for multiple supported implant systems and that costs approximately two-thirds less than Counterclaim-Defendant Mako's proprietary system, the RIO Robotic Arm Interactive Orthopedic device.

16.     In 2012, Blue Belt's NavioPFS® system was awarded the Frost & Sullivan Global Orthopedic Surgery Technology Innovation Award, earning the NavioPFS® praise for its "potential to alter the way the industry looks at knee replacements and other applications where precise bone shaping is critical."

10

## Mako's RIO System

17.     Today, robotics-assisted UKRs comprise approximately 10-15 percent of all UKRs performed in the United States annually, and that percentage is growing as healthcare providers increasingly seek to apply modern technology to address patients' and payers' heightened demand for reliable, safe, and cost-effective knee replacement.

18.     Prior to the FDA's approval of the Blue Belt NavioPFS® surgical system, Mako's RIO system was the only publicly available, FDA-approved robotics-assisted UKR system available for purchase and permanent installation in the United States.

19.     Mako's RIO system relies on computed tomography ("C-T") scans to map a desired path for the surgeon's hand-held cutting apparatus, which provides haptic sensory feedback to the surgeon when movements deviate from the desired path.

## Superiority of Blue Belt's New Technology

20.     On information and belief, the list price for a new RIO system exceeds $1 million, not including service costs, which on information and belief can add $100,000 or more annually to the cost of owning a RIO system.

21.     New NavioPFS® systems are available for less than $400,000, with an optional service agreement that costs less than $40,000 annually.

22.     Blue Belt's own patented technology, which does not infringe any of Mako's patents or patents licensed by Mako for its RIO system, allows Blue Belt to deliver comparable or better performance at a drastically more affordable price point.

23.     Blue Belt's innovation, cost-effective methods, and competitive pricing have allowed healthcare providers to help many patients.  Since 2012, Blue Belt has sold approximately 20 NavioPFS® systems in the United States, to hospitals, private practitioners,

and ambulatory surgery centers ("ASCs"), and has received uniformly positive reviews for the NavioPFS® system's accuracy, reliability, and cost-effectiveness.

24.     Blue Belt has beaten Mako in fair competition for sales in the United States.  In at least nine confirmed instances where prospective buyers were considering both NavioPFS® and RIO, the buyer selected Blue Belt's product and completed the purchase.

25.     Blue Belt's burgeoning success has not gone unnoticed by Mako and by AOI. Indeed, both Counterclaim-Defendants know that consumers, given the choice between Mako's and Blue Belt's systems, will favor the more cost-effective option.  But rather than competing against Blue Belt lawfully on price or through product differentiation, Mako has undertaken a national campaign of unlawful tactics with the intention of destabilizing Blue Belt's business, imposing remedial costs on Blue Belt, and unfairly forcing Blue Belt to raise its prices, all to the detriment of healthcare providers and patients throughout the United States.

**Mako's and AOI's Sham Patent Claims in the Florida Action**

26.     Mako has licensed, among other intellectual property, the '417 patent, which is entitled "Method and device system for removing material or for working material."

27.     On information and belief, Mako's license to the '417 patent imposes a production cost on Mako that Blue Belt does not, and need not, face.  On information and belief, Mako and AOI believe that imposing the costs of licensing the '417 patent on Blue Belt will force Blue Belt to raise its prices.

28.     AOI and Mako have asserted the '417 patent against Blue Belt and the NavioPFS® in this action, No. 1:14-cv-61263-KMM/CMM (S.D. Fla.) (the "Florida Action"). In the Florida Action, AOI and Mako purport to seek damages and an injunction in connection with Blue Belt's alleged infringement.

29.     On information and belief, Mako and AOI know that Blue Belt does not practice any valid claims of the '417 patent in connection with the NavioPFS® system.   Therefore, Counterclaim-Defendants' claims for damages and an injunction are an unlawful attempt to leverage the patent system in order to raise Blue Belt's costs and, eventually, its retail prices.

30.     Mako and AOI's claims against Blue Belt in the Florida Action are a sham:  their claims of patent infringement are objectively baseless, and on information and belief they have filed those claims with the subjective intent to inflict unlawful injury on Blue Belt, including by exerting undue pressure on Blue Belt to raise the prices of the NavioPFS® and related products to account for costs that Blue Belt legally should not have to bear.

31.     On or about March 14, 2014, at a conference of the American Academy of Orthopedic Surgeons in New Orleans, a Mako senior executive met with a consultant to Blue Belt who has a relationship with Blue Belt's upper-level management.  Mako's senior executive told Blue Belt's consultant that Mako believes that Blue Belt is undermining Mako's sales of capital equipment by making it harder for Mako to consummate sales of the RIO system at its current prices.  On information and belief, the Mako senior executive conveyed to Blue Belt's consultant that Blue Belt was impairing Mako's ability to charge elevated prices for installed UKR systems.  The Mako senior executive then told Blue Belt's consultant that Mako would not pursue the Florida Action or other legal action if Blue Belt agreed to raise its prices.

32.     On information and belief, Mako intended by this interaction to secure Blue Belt's agreement to raise its own prices to an unfairly elevated level, even higher than the level at which Blue Belt would need to price its products if it were deemed to owe Mako and AOI a reasonable royalty on the '417 patent (which Blue Belt denies it owes, as Blue Belt does not

practice the '417 patent and thus has no obligation to pay any royalty for it).  Blue Belt refused to entertain Mako's proposal.

33.     On information and belief, AOI has authorized and approved of Mako's assertion of baseless claims of the '417 patent as part of Mako's unfair and unlawful tactics.

### Mako's Other Unlawful Actions

34.     Separately and in addition to its abuse of the patent laws in the Florida Action, Mako has unlawfully attempted to further interfere with Blue Belt's business in other ways.

35.     On information and belief, Mako has sought to collude with owners of other intellectual property, in order to impose further illegitimate costs on Blue Belt's business.  On or between June 5 and June 7, 2014, a representative of Stryker Corporation ("Stryker"), Mako's parent corporation, approached an employee from Think Surgical (formerly known as Curexo), the maker of the ROBODOC Surgical System for, among other things, Total Hip Arthroplasty ("THA").  The Stryker representative proposed that Think Surgical join the Florida Action as a plaintiff to assert against Blue Belt certain patents already licensed by Mako.

36.     Mako has engaged in unfair competition in order to stunt Blue Belt's progress with key healthcare providers.  For example, at the Community Regional Medical Center in Fresno, California, Mako sales representatives offered to provide practitioners with a free RIO system, on the condition that they uninstall their NavioPFS® system.

37.     On information and belief, Mako is pursuing a nationwide plan to "swap out" NavioPFS® systems, at a loss, in order to prevent Blue Belt from obtaining a critical mass of practitioners who use the NavioPFS®.  On information and belief, Mako is pursuing this plan in order to prevent Blue Belt from obtaining further market credibility for NavioPFS® and to prevent Blue Belt from obtaining further data regarding the efficacy of NavioPFS® in the field,

as Mako knows that such data would result from surgeons' use of NavioPFS® and would further demonstrate that NavioPFS® is just as effective as Mako's RIO system but at approximately one-third the cost.

<u>**Mako's False Statements to the Marketplace**</u>

38.     As part of its campaign to dislodge Blue Belt's growing foothold with surgeons and hospitals, Mako has resorted to a variety of unlawful, false, and misleading statements. Among other things, Mako and its agents have falsely stated to current and prospective Blue Belt customers that:  Blue Belt infringes on Mako's intellectual property; Blue Belt was forced to recall all of its NavioPFS® systems because of safety malfunctions; pending legal actions will require customers to cease using their NavioPFS® systems; Blue Belt requires NavioPFS® users to also use Blue Belt's implants; the NavioPFS® system is not actually robotic; the NavioPFS® system is incompatible with burs larger than four millimeters; the NavioPFS® system cannot be used to perform lateral UKR procedures; certain customers were returning their NavioPFS® systems and/or abandoning their use; and Blue Belt will soon be forced to discontinue sales of the NavioPFS® system entirely.  Each and every one of these statements by Mako and its representatives is false and misleading.

39.     For example, in 2013, one or more Mako representatives made false, misleading, and deceptive statements about Blue Belt to employees of St. Francis Memorial hospital in San Francisco ("St. Francis Memorial"), a prospective Blue Belt customer.  Mako tried to convince St. Francis Memorial staff that one or more of Blue Belt's products were not lawfully commercialized because they allegedly lacked clinical data, resulted in long case durations, and did not contain certain features.  These statements were false and misleading.

40.     In mid- to late-2013, one or more Mako representatives spoke with employees of McBride Orthopedic Hospital in Oklahoma City ("McBride") and made false, deceptive, and misleading statements meant to convince McBride to use Mako's products instead of Blue Belt's products.  These statements included false suggestions that Blue Belt's technology was not "proven," that NavioPFS® infringes on Mako's intellectual property, and that Blue Belt would soon be forced to discontinue the NavioPFS® system and support for it.

41.     In late 2013, one or more Mako representatives contacted employees of Valley Baptist Medical Center in Brownsville, Texas ("Valley Baptist") and made false, misleading, and deceptive statements about the NavioPFS® system in order to convince Valley Baptist to use Mako products instead.  Mako representatives falsely suggested that NavioPFS® was unproven and that the system could not do what comparable Mako products can do.

42.     In or between March and May of 2014, Mako representatives made false, misleading, and deceptive statements about the NavioPFS® system to an orthopedic surgeon in or around Fremont, California.  Mako representatives falsely stated that a four-millimeter bur is the largest bur the NavioPFS® system can utilize, that the NavioPFS® system cannot be used to perform lateral UKR surgeries, and that St. Francis Memorial was returning its NavioPFS® system and discontinuing use of it in the meantime.

43.     In early June 2014, representatives of Mako and/or Stryker contacted a physician at Southcoast Physicians Group ("Southcoast") and made false, deceptive, and misleading statements about Blue Belt and its products.  The Mako and/or Stryker representatives falsely stated that this physician could no longer use his NavioPFS® system because of a recent alleged recall and because of the Florida Action against Blue Belt, and that Blue Belt would soon be put out of business by intellectual property lawsuits, including the Florida Action.

16

44.     On or about June 5, 2014, representatives of Mako and/or Stryker, including at least Bill Peters, made false, deceptive, and misleading statements to doctors and other potential customers associated with the Southeast Alabama Medical Center ("SAMC").  The Mako and/or Stryker representatives, including Mr. Peters, falsely and misleadingly stated that the NavioPFS® is "not a robotic system," that the NavioPFS® "was recalled last week due to failures in surgery," including a "clinical failure to keep the bur[] in the field," and that Blue Belt "also [has] another major problem, St[r]yker just filed a lawsuit because they [Blue Belt] stole IP and they are making false claims about being a robotic system."  The Mako and/or Stryker representatives also falsely accused Blue Belt of requiring surgeons to use Blue Belt's implants with the system.  The representatives also falsely claimed that Blue Belt would "most likely be put out of business."

45.     Mako's tactics have had, and continue to have, a direct and substantial impact on Blue Belt's business operations, including its ability to consummate sales and maintain business relationships.  For example, Mako's false and misleading statements to SAMC representatives threaten to unfairly affect the outcome of Mako and Blue Belt's direct competition to sell and install a robotics-assisted UKR system at SAMC.

46.     Mako's campaign of false, deceptive, and misleading statements also includes tactics that amount to interference with Blue Belt's employment contracts.  On June 2, 2014, a Mako representative named Andrew Whetsel contacted Andrew Camp, Blue Belt's Regional Manager for the Northeast, and used false, deceptive, and misleading statements about Blue Belt to try to convince Mr. Camp to quit Blue Belt and begin working for Mako.  Mr. Whetsel falsely stated that Blue Belt was in trouble in light of the Florida Action—which Mako had filed the previous business day.   Mr. Whetsel also asked for contact information for Blue Belt's

17

employees in New York and New Jersey, in an attempt to contact these employees, mislead them regarding Blue Belt, and convince them to quit Blue Belt and join Mako.

47.     Mako apparently has no intention of discontinuing its unlawful campaign against Blue Belt.  On June 20, 2014, attorneys for Blue Belt sent attorneys for Mako a letter detailing eight instances of unlawful Mako practices actionable under federal and state law and demanding that Mako immediately:  "cease and desist from making false or misleading statements in the market about Blue Belt, . . . cease and desist from its other unfair and unlawful actions harming Blue Belt . . . [and] cease and desist from efforts to interfere with the valid business and contractual relationships Blue Belt has with its customers, prospective customers and employees."  Mako responded to Blue Belt's letter on July 1, 2014, but refused to address the substance of Blue Belt's letter, instead claiming only that it would "investigat[e]" Blue Belt's grievances.  Although Mako claimed to take Blue Belt's allegations "seriously," Mako would not commit to refrain from further improper conduct.

### Blue Belt's '582 Patent

48.     Blue Belt's growing success arises from its ability to cost-effectively leverage years of groundbreaking research that began at the Robotics Institute at CMU and continued after Blue Belt's spinoff.  One critical aspect of that research is U.S. Patent No. 6,757,582 (the "'582 patent"), entitled "Methods and Systems to Control a Shaping Tool," which issued to CMU on June 29, 2004 and which is directed to the process of controlling cutting tools to obtain a target shape.  The NavioPFS® practices claims of the '582 patent.

49.     Mako's RIO system infringes one or more claims of the '582 patent.  Mako does not have a license to practice the '582 patent.

18

50.     Thus, in contrast to Mako's sham assertion of the '417 patent against Blue Belt, Blue Belt has a legitimate claim of patent infringement against Mako.  Blue Belt therefore brings a counterclaim for patent infringement in this Florida Action, in the interest of resolving both Blue Belt's and Mako's and AOI's claims in the same forum and at the same time, so that Blue Belt can return to focusing its energies on providing innovative, efficient, and effective surgical tools to surgeons and healthcare providers.

## COUNT I

**DECLARATION OF INVALIDITY OF THE '417 PATENT (28 U.S.C. § 2201)**

51.     Blue Belt repeats and re-alleges each and every allegation of paragraphs 1 through 50 as if set forth fully herein.

52.     There is an actual, live controversy between Blue Belt and Counterclaim-Defendants as to whether the '417 patent is valid.  Specifically, Blue Belt contends that the '417 patent is invalid, whereas Counterclaim-Defendants contend that it is valid.

53.     The claims of the '417 patent are invalid for failure to comply with the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103, 112, 116, and 256 and/or the non-statutory doctrine of obviousness-type double-patenting, because, *inter alia*, the specification fails to enable or describe the full scope of the issued claims, and/or the claims are anticipated and/or rendered obvious by the prior art.

54.     Blue Belt therefore seeks a declaration that each of the claims of the '417 patent is invalid.

## COUNT II

**DECLARATION OF NON-INFRINGEMENT OF THE '417 PATENT (28 U.S.C. § 2201)**

55.     Blue Belt repeats and re-alleges each and every allegation of paragraphs 1 through 54 as if set forth fully herein.

56.     There is an actual, live controversy between Blue Belt and Counterclaim-Defendants as to whether Blue Belt has infringed or does infringe, directly or indirectly, any valid claim of the '417 patent.

57.     Any use, manufacture, offer for sale, sale, and/or importation into the United States of NavioPFS® by Blue Belt does not directly or indirectly infringe any claim of the '417 patent, literally or under the doctrine of equivalents.

58.     Blue Belt therefore seeks a declaration that it has not and does not infringe any claim of the '417 patent, directly or indirectly, either literally or under the doctrine of equivalents.

## COUNT III

**FALSE ADVERTISING (15 U.S.C. § 1125(a))**

59.     Blue Belt repeats and re-alleges each and every allegation of paragraphs 1 through 58 as if set forth fully herein.

60.     Blue Belt is a competitor of Mako, at least because the parties each advertise and sell a product or service generally described as surgical equipment and technology in interstate commerce.

61.     Mako has falsely advertised on at least one occasion that, among other things:  (i) consumers can no longer use Blue Belt's NavioPFS® system because of a safety recall; (ii) Blue Belt infringes on Mako's intellectual property and will soon no longer be in business; (iii) the

20

NavioPFS® system requires surgeons to use Blue Belt's proprietary implants; (iv) the NavioPFS® system lacks clinical data sufficient to justify its claimed results; (v) the NavioPFS® system lacks certain features; and (vi) Blue Belt stole intellectual property from Mako.

62.    Mako's false advertisements were made in bad faith, deceived or had the capacity to deceive consumers, and had a material effect on consumer purchasing decisions affecting interstate commerce.

63.    As a result of Mako's deceptive advertisements, Blue Belt has suffered damages in an amount to be determined at trial.

64.    Blue Belt is entitled to treble damages, as well as its attorneys' fees.

## <u>COUNT IV</u>

### DECEPTIVE AND UNFAIR TRADE PRACTICES (Fla. Stat. 501.201, *et seq.*)

65.    Blue Belt repeats and re-alleges each and every allegation of paragraphs 1 through 64 as if set forth fully herein.

66.    Mako has falsely and misleadingly stated on at least one occasion that, among other things:  (i) consumers can no longer use Blue Belt's NavioPFS® system because of a safety recall; (ii) Blue Belt infringes on Mako's intellectual property and will soon no longer be in business; (iii) the NavioPFS® system requires surgeons to use Blue Belt's proprietary implants; (iv) the NavioPFS® system lacks clinical data sufficient to justify its claimed results; (v) the NavioPFS® system lacks certain features; and (vi) Blue Belt stole intellectual property from Mako.

67.    By making these false and misleading statements, Mako has engaged in unfair and deceptive trade practices in a trade or commerce.

68.     Mako knew or should have known of the falsity and misleading nature of these statements, but, on information and belief, Mako nonetheless intended for the misrepresentations to induce others to rely and act on such false and misleading information.

69.     Mako's misrepresentations regarding Blue Belt and its products violate standards for fair competition imposed by state and federal law and have misled the consuming public to its detriment and to the detriment of Blue Belt's legitimate business enterprise.

70.     As a result of Mako's acts, Blue Belt has suffered damages in an amount to be determined at trial.

## COUNT V

## COMMON-LAW UNFAIR COMPETITION

71.     Blue Belt repeats and re-alleges each and every allegation of paragraphs 1 through 70 as if set forth fully herein.

72.     Mako has engaged in deceptive and fraudulent conduct by falsely and misleadingly stating on at least one occasion that, among other things:  (i) consumers can no longer use Blue Belt's NavioPFS® system because of a safety recall; (ii) Blue Belt infringes on Mako's intellectual property and will soon no longer be in business; (iii) the NavioPFS® system requires surgeons to use Blue Belt's proprietary implants; (iv) the NavioPFS® system lacks clinical data sufficient to justify its claimed results; (v) the NavioPFS® system lacks certain features; and (vi) Blue Belt stole intellectual property from Mako.

73.     Mako knew or should have known of the falsity of these statements, but, on information and belief, Mako made these statements in bad faith and with malice or reckless indifference to the interests of Blue Belt and the market for robotic surgical tools for UKR, and

with the intention of inducing others to rely and act on them, causing consumer confusion or giving rise to the likelihood of such confusion.

74.     As a result of Mako's acts, Blue Belt has suffered damages in an amount to be determined at trial.

**COUNT VI**

**COMMON-LAW TORTIOUS INTERFERENCE**

75.     Blue Belt repeats and re-alleges each and every allegation of paragraphs 1 through 74 as if set forth fully herein.

76.     Mako has interfered with actual and/or prospective business relationships between Blue Belt and several other participants in the market for robotic surgical tools for UKR, their employees and agents, and related individuals, including but not limited to St. Francis Memorial, McBride, Valley Baptist, an orthopedic surgeon in California, Southcoast, SAMC, Andrew Camp, and other Blue Belt employees.

77.     At the time of each such interference, Mako knew of Blue Belt's actual or prospective business relationship with the target of that interference.

78.     Mako's intentional and unjustified interference with Blue Belt's business relationships has caused or threatened to cause one or more of Blue Belt's actual or potential customers or employees to refuse to deal with Blue Belt.

79.     As a direct and proximate result of Mako's interference, Blue Belt has suffered damages in an amount to be determined at trial.

## COUNT VII

### DIRECT INFRINGEMENT OF THE '582 PATENT (35 U.S.C. § 271(a))

80.     Blue Belt repeats and re-alleges each and every allegation of paragraphs 1 through 79 as if set forth fully herein.

81.     The '582 patent, entitled "Methods and Systems to Control a Shaping Tool," was duly and legally issued by the U.S. Patent and Trademark Office on June 29, 2004.  The '582 patent is assigned to Blue Belt.  A true and correct copy of the '582 patent is attached as **Exhibit A**.

82.     All conditions precedent to the maintenance of Blue Belt's claim of patent infringement by Mako have occurred or been performed or have been waived.

83.     In violation of 35 U.S.C. § 271(a), Mako has infringed in the past and continues to directly infringe the '582 patent in this judicial district and elsewhere in the United States.  Mako has infringed and has continued to infringe through the manufacture, use, offer for sale, sale, and/or importation of products, associated software, and components, including, without limitation, the RIO Robotic Arm Interactive Orthopedic device, the Tactile Guidance System ("TGS"), and Restoris implants.

84.     Mako's acts of infringement of the '582 patent have caused and will continue to cause Blue Belt substantial and irreparable injury, for which Blue Belt is entitled to receive injunctive relief and damages adequate to compensate Blue Belt for such infringement.

85.     This case is exceptional, and therefore, Blue Belt is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

<u>COUNT VIII</u>

**INDIRECT INFRINGEMENT OF THE '582 PATENT (35 U.S.C. § 271(b)-(c))**

86.     Blue Belt repeats and re-alleges each and every allegation of paragraphs 1 through 85 as if set forth fully herein.

87.     On information and belief, Mako has contributorily infringed and/or actively induced infringement of the '582 patent in violation of 35 U.S.C. § 271(b)-(c), and continues to do so with knowledge of or willful blindness to the existence of the '582 patent, with specific intent to contributorily infringe and/or to induce infringement, and with knowledge of or willful blindness that the induced acts would constitute patent infringement.  On information and belief, each of the TGS surgical robotic assistance system, the RIO Robotic Arm Interactive Orthopedic device, and the Restoris implant, each sold or offered for sale by Mako, is not a staple article of commerce, is material to practicing the invention in the claims of the '582 patent, and has no substantial non-infringing uses.  For example, Mako's tactile robotic arm and patient-specific visualization system is designed specifically to control the movements of the robotic arm and continuously track and associate the location of both the robotic arm and diseased portions of the patient's joint, as described in the '582 patent's claims.

88.     Mako's indirect infringement has occurred by Mako's engaging in at least the following activities:  designing and manufacturing the RIO and TGS systems and their components specifically for sale and use in the United States, including Florida; selling and offering to sell these systems and their components in the United States, including Florida; and soliciting, encouraging, and enabling infringing activity in the United States, including Florida, through promotional and instructional materials and activities relating to MAKOplasty or the

RIO or TGS systems, and by assisting directly in procedures performed using the RIO and TGS systems.

89.     MAKO's acts of contributory infringement and/or inducing infringement of the '582 patent have caused and will continue to cause Blue Belt substantial and irreparable injury, for which Blue Belt is entitled to receive injunctive relief and damages adequate to compensate Blue Belt for such infringement.

90.     This case is exceptional, and therefore, Blue Belt is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## DEMAND FOR RELIEF

Blue Belt respectfully requests that this Court enter judgment in Blue Belt's favor on Counts I through VIII of its Counterclaims against Mako and AOI, and grant Blue Belt the following relief:

A.     A declaration that each of the claims of the '417 patent is invalid or unenforceable.

B.     A declaration that Blue Belt does not directly or indirectly infringe any claim of the '417 patent, either literally or under the doctrine of equivalents.

C.     An award of all available damages, including, but not limited to: for Counts III, IV, V, and VI, compensatory, actual, and consequential damages, and Mako's profits gained; and for Counts VII and VIII, Blue Belt's lost profits from Mako's infringement of the '582 patent, but in any event not less than a reasonable royalty;

D.     An award of treble damages for all counts available;

E.     An injunction ordering Mako to deliver up and destroy all false advertisements regarding Blue Belt and restraining Mako and its affiliates, subsidiaries, officers, directors,

agents, servants, employees, representatives, licensees, successors, assigns, and all those acting for them and on their behalf, from engaging in further false advertising regarding Blue Belt;

F.      An injunction restraining Mako and its affiliates, subsidiaries, officers, directors, agents, servants, employees, representatives, licensees, successors, assigns, and all those acting for them and on their behalf, from continuing their deceptive and unfair trade practices, and requiring Mako to take all actions reasonably necessary to remediate the harm caused to Blue Belt's reputation;

G.      An injunction restraining Mako and its affiliates, subsidiaries, officers, directors, agents, servants, employees, representatives, licensees, successors, assigns, and all those acting for them and on their behalf, from continuing to interfere with Blue Belt's business relationships with its current and prospective customers and employees;

H.      An injunction restraining Mako and its affiliates, subsidiaries, officers, directors, agents, servants, employees, representatives, licensees, successors, assigns, and all those acting for them and on their behalf, from further infringement, further inducements of infringement, and further contributions to infringement of the '582 patent;

I.      A declaration that this is an exceptional case, and an award of attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest at the highest rate allowable by law on all counts available; and

J.      Such other relief as this Court deems just and proper.

## JURY DEMAND

Blue Belt demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues presented by Blue Belt's Counterclaims that are so triable.

DATED:  July 10, 2014                Respectfully submitted,

**Feldman Gale, P.A.**
One Biscayne Tower, Suite 3000
Two South Biscayne Boulevard
Miami, FL 33131
Telephone No.  (305) 358-5001
Facsimile No.  (305) 358-3309


By: */s Richard Guerra*
       James A. Gale
       Florida Bar No. 371726
       EMail: jgale@feldmangale.com
       Richard Guerra
       Florida Bar No. 689521
       EMail: rguerra@feldmangale.com

       **Gibson, Dunn & Crutcher LLP**
       Wayne M. Barsky *(Admitted Pro Hac Vice)*
       Email:  wbarsky@gibsondunn.com
       Stuart M. Rosenberg *(Admitted Pro Hac Vice)*
       Email:  srosenberg@gibsondunn.com
       Timothy P. Best *(Admitted Pro Hac Vice)*
       Email:  tbest@gibsondunn.com
       2029 Century Park East
       Los Angeles, CA 90067-3026
       Telephone No.  (310) 552-8500
       Facsimile No.  (310) 552-7010

       **Gibson, Dunn & Crutcher LLP**
       Josh Krevitt (*Admitted Pro Hac Vice*)
       Email:  jkrevitt@gibsondunn.com
       200 Park Avenue
       New York, NY 10166-0193
       Telephone No.  (212) 351-4000
       Facsimile No.  (212) 351-4035

       **Gibson, Dunn & Crutcher LLP**
       Stuart M. Rosenberg (*Admitted Pro Hac Vice*)
       Email:  srosenberg@gibsondunn.com
       1881 Page Mill Road
       Palo Alto, CA 94304
       Telephone No.  (650) 849-5300
       Facsimile No.  (650) 849-5333

       *Counsel for Defendant*
       *Blue Belt Technologies, Inc.*

28

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on July 10, 2014, I electronically filed the foregoing document with the Clerk of the Court CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s Richard Guerra*             

Richard Guerra

## SERVICE LIST

***Mako Surgical Corp., et al. v. Blue Belt Technologies, Inc.***
Case No. 14-cv-61263-DGP/WCT
United States District Court, Southern District of Florida

**Shook, Hardy & Bacon LLP**
Humberto H. Ocariz
Email:  hocariz@shb.com
Miami Center, Suite 3200
201 S. Biscayne Boulevard
Miami, FL 33131
Direct Office No.  (305) 960-6939
Office Main No.  (305) 358-5171
Facsimile No.  (305) 358-7470
*Via CM/ECF*

**Morrison & Foerster LLP**
Wendy J. Ray (*Admitted Pro Hac Vice*)
Email:  wray@mofo.com
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
Telephone No.  (213) 892-5200
Facsimile No.  (213) 892-5454
*Via CM/ECF*

**Morrison & Foerster LLP**
Wesley E. Overson (*Admitted Pro Hac Vice*)
Email:  woverson@mofo.com
Danielle Coleman (*Admitted Pro Hac Vice*)
Email:  dcoleman@mofo.com
Elizabeth A. Patterson (*Admitted Pro Hac Vice*)
Email:  epatterson@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone No.  (415) 268-7000
Facsimile No.  (415) 268-7522
*Via CM/ECF*

*Counsel for Plaintiffs*
*Mako Surgical Corp., and All-of-Innovation GMBH*