**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 14-CV-61263-DPG/WCT

MAKO SURGICAL CORP., a Delaware
corporation, and ALL-OF-INNOVATION
GMBH, a German corporation,

                   Plaintiffs,

     vs.

BLUE BELT TECHNOLOGIES, INC., a
Pennsylvania corporation,

                   Defendant.

_____/

## FIRST AMENDED COMPLAINT

Plaintiffs MAKO Surgical Corp. ("MAKO") and All-Of-Innovation GmbH ("AOI")

(collectively, "Plaintiffs") bring this patent infringement action against Defendant Blue Belt

Technologies, Inc. ("Blue Belt"), and MAKO brings this false advertising and unfair competition

action against Blue Belt, and Plaintiffs allege as follows:

## PARTIES

1.     Plaintiff MAKO is a corporation organized and existing under the laws of

Delaware.  MAKO maintains its principal place of business at 2555 Davie Road,

Fort Lauderdale, Florida 33317.

2.     Plaintiff AOI is a corporation organized and existing under the laws of Germany.

AOI maintains its principal place of business at Gleissenweg 1, Ismaning, Bayern 85737,

Germany.

1

735339v1

3.      On information and belief, Defendant Blue Belt is a corporation organized and existing under the laws of Pennsylvania with its principal place of business at 2905 Northwest Boulevard, Suite 40, Plymouth, Minnesota 55441.

### JURISDICTION AND VENUE

4.      This is a complaint for patent infringement pursuant to 35 U.S.C. § 271 et seq., false advertising pursuant to 15 U.S.C. § 1125(a)(1)(B), and violations of Florida statutory and common law.  This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

5.      Blue Belt engages in business and actively markets, promotes, and sells its products in the State of Florida, including, on information and belief, in this judicial district.

6.      On information and belief, Blue Belt has personally or through its representatives committed acts of infringement, false advertising, and unfair competition, within the State of Florida and/or in this judicial district, subjecting it to personal jurisdiction in the State of Florida by conduct including:

a.      offering to sell its infringing product in Florida;

b.      inducing others to infringe the '417 patent;

c.      advertising and marketing its infringing product via the Internet;

d.      directing promotional activities towards Florida by having employees and representatives attend and/or present information about its infringing product at conferences and trade shows for the prospect of commercial benefit in Florida;

e.      hiring employees who are based in this judicial district to assist with the marketing and sale of its infringing product;

2

735339v1

      f.     admitting that it is subject to personal jurisdiction in this judicial district in a recent case involving Blue Belt's hiring of a MAKO employee working in this district;

      g.     purchasing a key component of the infringing product, the high-speed Anspach eMax 2 drill, from a supplier that is located in this judicial district;

      h.     advertising employment via the Internet for positions such as "Clinical Account Manager" that will have responsibility for sales of infringing product into states such as Florida;

      i.     entering strategic partnerships with implant manufacturers to market its infringing products in states such as Florida;

      j.     allowing medical professionals and others in Florida to try its infringing product;

      k.     sponsoring events that target Florida surgeons in order to promote its infringing product to them;

      l.     advertising its infringing product in medical publications with circulation in Florida; and

      m.     distributing materially false, misleading, and disparaging advertisements purporting to compare Blue Belt's NavioPFS™ device to MAKO's RIO® Platform in Florida and throughout the United States, on information and belief.

7.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

## BACKGROUND

### MAKO's Groundbreaking Robotic Surgical Platform

8.     MAKO is a successful medical device company specializing in the manufacture and marketing of MAKOplasty®, its proprietary surgical robotic assistance solution for use in partial knee and total hip arthroplasty.

9.     MAKO was founded in 2004 to develop, manufacture, and market robotic technologies for orthopedic surgery.  MAKO's success is based on numerous breakthroughs in robotics and controls, enabling a robotic system to perform accurate bone shaping through minimally invasive incisions.  MAKO has over 300 U.S. and foreign patents and patent applications.

10.     MAKO designs and markets its MAKOplasty solution in the United States. MAKOplasty consists of two main components:  the RIO® Robotic Arm Interactive Orthopedic surgical platform (the "RIO Platform" or "RIO"), which is comprised of MAKO's proprietary tactile robotic arm and its patient-specific visualization system that provides pre-operative and intra-operative guidance to surgeons; and MAKO's RESTORIS® family of implant systems, which are designed for optimized restoration of the diseased compartments of certain joints. MAKOplasty is offered in over 150 hospitals across the country, including the Mayo Clinic Hospital in Jacksonville, Florida.  Over 23,000 procedures have been performed using MAKO's proprietary robotic platforms.

11.     The RIO Platform has succeeded in the market in part because it achieves a high level of accuracy in aligning and placing implants, thereby reducing the potential for complications.

4

12.     Driven by its groundbreaking use of robotics, MAKO has achieved impressive growth since its founding and won numerous awards.  For example, in 2011, it ranked No. 1 on Deloitte's Technology Fast 500™ ranking of the 500 fastest growing technology, media, telecommunications, life sciences, and clean technology companies in North America.  In 2012, the South Florida Manufacturers Association named MAKO its Manufacturer of the Year. Furthermore, MAKO's RIO Platform has been honored by R&D Magazine and by the Medical Design Excellence Awards, which bestowed the 2010 Gold Medical Design Excellence Award on the RIO Platform.

13.     MAKO continues to achieve success in the medical device field because of its commitment to and investments in intellectual property, research and development, high-quality manufacturing and engineering, and outstanding customer support in the United States.

14.     MAKO researches, develops, engineers, manufactures, assembles, tests, and warehouses its RIO Platform, implants, and associated products at its headquarters in Fort Lauderdale, Florida, and its systems are sold across the United States.

**AOI'S Innovative Surgical Invention**

15.     AOI is an entity that focuses on innovation and intellectual property in the medical field, and particularly in the area of surgical systems.  One of AOI's landmark inventions is a method and system for high-precision removal of material or tissue in surgery to allow for the precise insertion of implants as reflected in U.S. Patent No. 7,346,417.  In part due to this patent, the inventor Tim Lueth was honored as a Top-3 Inventor of the Year in Europe in the category of lifetime achievement by the European Patent Office, and also became a member of the German National Academy of Science and Technology (limited to 400 living members).

5

**Blue Belt's Surgical System**

16.     On December 10, 2012, Blue Belt announced that it received clearance from the Food and Drug Administration ("FDA") to market its NavioPFS™ orthopedic surgical system in the United States.  NavioPFS was approved for use in Unicondylar Knee Replacement ("UKR"), commonly known as partial knee replacement.

17.     As described in Blue Belt's "510K" summary to the FDA, NavioPFS is "a computer-assisted orthopedic surgical navigation and surgical burring system."  Blue Belt's system uses "established technologies of navigation via a passive infrared tracking camera to aid the surgeon in establishing a bone surface model for the target surgery and to plan the surgical implant location based on predefined bone landmarks and known configuration of the surgical implant"; the system then "aids the surgeon executing the surgical plan by using a standard off-the-shelf surgical drill motor and bur" adapted using a tracking system; "software controls the position of the tip of the surgical bur relative to the end of the guard attached to the handpiece"; "[a]s the planned surface is reached, the tip of the bur is fully retracted within the guard"; "[a]n alternative mode of operation is speed control mode," in which the "speed of the bur is controlled and the bur stops as the planned surface is reached."

18.     According to Blue Belt, the NavioPFS combines "intraoperative navigation" and "implant planning features."

19.     On information and belief, Blue Belt has offered to sell and has sold the NavioPFS system in the United States, including Florida.

20.     Blue Belt has also publicly exhibited and demonstrated the NavioPFS system and distributed advertising, promotional, and instructional materials regarding the NavioPFS system in the United States, including in Florida.  Blue Belt teaches and instructs its actual and potential

6

customers on the use and operation of its NavioPFS system, for example, on its website and during its frequent attendance at trade shows.  On information and belief, Blue Belt's customers have in fact used the NavioPFS as taught and demonstrated by Blue Belt.

### Blue Belt's False and Misleading Advertisements

21.     Blue Belt has made, and on information and belief continues to make, false and misleading statements about the accuracy and procedure time of NavioPFS, including false and misleading statements comparing the accuracy and speed of NavioPFS to the RIO Platform. Blue Belt's false and misleading statements have also appeared in advertising and marketing material, including slides displayed during trade show presentations to potential customers across the United States.

22.     For example, in presentations to potential customers by the Blue Belt marketing team at several conferences, most recently at the June 2014 Computer Assisted Orthopaedic Surgery International meeting in Milan attended by numerous U.S. surgeons, Blue Belt represented, based on "studies," that NavioPFS and MAKO's RIO Platform had "comparable error values."  In the presentations, Blue Belt set forth "accuracy" data purporting to demonstrate that NavioPFS was in fact more accurate than RIO, measured by smaller degrees and millimeters of error.  Blue Belt also claimed that NavioPFS had shorter case times than MAKO RIO.

23.     This statement and any similar statements by Blue Belt regarding the relative accuracy and speed of the NavioPFS and MAKO RIO are materially false and misleading.

24.     MAKO's accuracy claims about its RIO Platform are well founded and reliable as they come from clinical in vivo studies of numerous live human subjects that compare the subjects' individualized preoperative and postoperative three-dimensional CT scans and computer surgical plans.  The CT scan protocol included 200 slices taken from the knee with

7

maximum slice thickness of 1 mm.  After bone models from the preoperative and postoperative

scans were registered to establish a common reference, displacement errors were calculated

using a 3D-to-3D iterative closest point algorithm.

25.     On information and belief, the studies relied upon by Blue Belt are not

sufficiently reliable to permit the conclusion that NavioPFS had error values smaller or even

comparable to MAKO's platform.  The studies cited by Blue Belt rely solely on non-clinical

synthetic bone and cadaver studies for the supposed "accuracy" statistics about NavioPFS.  In

contrast, the MAKO data comes from clinical in vivo studies.  The very study that Blue Belt

cites acknowledges that there are fundamental differences between in vivo clinical studies and

non-clinical studies that influence the error values, admitting that under clinical conditions, there

are numerous factors to consider and that "errors may be larger" compared to non-clinical

studies, which contain fewer variables.

26.     The "accuracy" comparison in Blue Belt's advertisements is also misleading

because the studies relied upon by Blue Belt do not account for several significant sources of

procedure error.  In particular, on information and belief, the testing methodology in Blue Belt's

studies focuses primarily on mechanical subsystem errors and does not account for registration

and cementing errors.  In contrast, the studies cited for the error data for MAKO's products take

all sources of potential procedure error into account, including registration, cementing, and

cutting error.  Registration and cementation are significant sources of potential error, which, on

information and belief, are lacking from Blue Belt's studies.  Unlike the MAKO studies, on

information and belief, the Blue Belt studies considered only a portion of the total procedure

error, making the "accuracy" comparisons relying on these studies misleading.

27.     Furthermore, the implant used in Blue Belt's studies inhibits precise measurement of NavioPFS's accuracy.  The implant used by NavioPFS lacks markers that would allow a precise comparison between the planned and actual translational position of the tibial component of the implant on the anterior/posterior axis.  This was the only implant that the NavioPFS was programmed to be used with, at least according to one recent Blue Belt study.  Blue Belt's own study admits that the use of this implant means that the position of the implant on the anterior/posterior axis "could only be estimated" and these error measurements "could not be considered completely accurate."  Blue Belt's comparisons based on these "estimated" values are misleading.

28.     Additionally, the NavioPFS product does not perform initial CT or MRI scans to verify the accuracy of its data input.  Nor does it take into account individualized anatomy.  In papers released by Blue Belt touting its "image free technique," Blue Belt states that it relies on "gross approximation" or a "model" for its pre-operative measurements.  This makes Blue Belt's error claims unreliable and makes any comparison to the MAKO platform's individualized assessment of error data inapposite, false, and misleading.

29.     Blue Belt's "accuracy" representations are also misleading because they imply that a surgeon using Blue Belt's product will achieve a more accurate clinical result than a surgeon using MAKO's product.  On information and belief, there is no basis for that implication.  Blue Belt's recent 2014 presentation is especially misleading as it contains no warning to the customer that the NavioPFS "accuracy" data comes from studies of cadavers rather than clinical in vivo studies like those of the MAKO platform, or that the NavioPFS "accuracy" data accounts for only a portion of the total procedure error.  Upon information and belief, there are no competent and reliable published clinical studies to support any statement

9

that NavioPFS would achieve error values less than or even comparable to those of the MAKO platform when used by a customer in a clinical setting.

30.     Blue Belt's "case time" representations are also misleading.  For example, in its presentations to customers, Blue Belt purports to compare case times between NavioPFS and MAKO RIO, claiming that NavioPFS takes "31.5 minutes to cementation" compared to MAKO RIO's "35 minutes to cementation."  Blue Belt does not provide access to the studies from which it draws its "case time" data.  However, of the 40 Blue Belt surgical data points that appear on the next slide in Blue Belt's 2014 presentation, only one has a case time under 35 minutes, and the slide after this presents a sample case with a case time of 118 minutes.  Blue Belt's own data shows that Blue Belt cherry picked its comparison time, offering an unfairly non-representative example as the basis of comparison with MAKO RIO's time.  Thus, on information and belief, Blue Belt's "case time" comparisons are substantially misleading.

31.     Blue Belt's false and misleading statements about "accuracy" and "case time" have the tendency to deceive a substantial segment of potential customers who are Blue Belt's audience for its advertisements, trade show presentations, and other marketing.  This deception is material to consumers' purchasing decisions at all levels because accuracy and case time are critically important factors in consumers' choices among surgical devices.  On information and belief, customers have actually been deceived by Blue Belt's "accuracy" and "case time" claims.

32.     Blue Belt knew or should have known at all times relevant to this complaint that the "accuracy" and "case time" representations were false and misleading.  Indeed, the very studies cited in Blue Belt's promotional materials do not support the false and misleading conclusions stated in the marketing materials.  On information and belief, if studies actually supported Blue Belt's claims, Blue Belt would be aware of them and would have cited them.

33.     Upon information and belief, Blue Belt intended such false and deceptive advertisements and statements to persuade consumers that Blue Belt's product delivers faster and equally or more accurate results than MAKO's product.  Blue Belt and MAKO are direct competitors with respect to NavioPFS and RIO.  Upon information and belief, Blue Belt engaged in this deception for the purpose of convincing customers to buy or consider buying NavioPFS rather than competing products, including the RIO Platform.

34.     MAKO sent a letter to Blue Belt's attorneys on June 18, 2014, demanding that Blue Belt cease and desist all advertising in which Blue Belt makes false and misleading statements about the quality of MAKO's products.  Despite MAKO's demands, Blue Belt continues to distribute its false and misleading advertisements, leaving MAKO with no choice but to take legal action.

35.     On or after July 10, 2014, Blue Belt circulated a press release to potential customers in which it claimed that MAKO engages in "unfair business practices" that are "designed to increase Blue Belt's costs and force Blue Belt to raise its retail prices and undermine Blue Belt's position" and that MAKO has engaged in a "campaign of false advertising, unfair competition, and trade libel . . . including direct interference with Blue Belt's business and employment relationships."  These allegations are false and misleading and lack factual support.

36.     Blue Belt's press release further stated as fact, again without support, that NavioPFS "consistently beats Mako's product in fair competition for sales" and that "[r]ather than competing against Blue Belt lawfully on price or through product differentiation, Mako has undertaken a national campaign of anticompetitive tactics with the intention of destabilizing Blue Belt's business, reducing its value, and forcing Blue Belt to raise its prices to supracompetitive

11

levels, all to the detriment of UKR patients, healthcare providers and payers . . . which is

negatively impacting our industry as a whole." These highly inflammatory false statements were

distributed to customers in bad faith; are substantially misleading to consumers; are damaging to

Plaintiffs' reputation for quality, honesty, and fair dealing; and constitute unfair competition.

## THE ASSERTED PATENT

37.     U.S. Patent No. 7,346,417 ("the '417 patent"), entitled "Method and Device

System for Removing Material or for Working Material," was duly and legally issued by the

U.S. Patent and Trademark Office on March 18, 2008. The '417 patent is currently assigned to

Plaintiff AOI and exclusively licensed to MAKO Surgical Corp. in the relevant fields, including

knee arthroplasty utilizing a hand-held surgical device. A true and correct copy of the

'417 patent is attached as **Exhibit 1**.

38.     All conditions precedent to the maintenance of this action have occurred or been

performed or waived.

## COUNT I

## INFRINGEMENT OF THE '417 PATENT

39.     Plaintiffs incorporate by reference paragraphs 1 through 38 of this Complaint as

though fully set forth herein.

40.     On information and belief, in violation of 35 U.S.C. § 271, Blue Belt has

infringed in the past and continues to directly infringe the '417 patent in this judicial district and

elsewhere in the United States. Blue Belt has infringed and has continued to infringe through the

manufacture, use, offer for sale, sales, and/or importation of products, associated software, and

components, including, without limitation, the NavioPFS system.

12

41.     Blue Belt's acts of infringement of the '417 patent are being committed with knowledge of the '417 patent and its infringement.  Blue Belt received actual notice of its infringement of the '417 patent, most recently via a notice letter delivered prior to this suit being initiated.  Blue Belt nonetheless continues to intentionally and willfully infringe the '417 patent.

42.     Blue Belt's acts of infringement of the '417 patent have caused and will continue to cause Plaintiffs substantial and irreparable injury, for which Plaintiffs are entitled to receive injunctive relief and damages adequate to compensate Plaintiffs for such infringement.

## COUNT II

### INDIRECT INFRINGEMENT OF THE '417 PATENT

43.     Plaintiffs incorporate by reference paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44.     On information and belief, Blue Belt has contributorily infringed and/or actively induced infringement of the '417 patent in violation of 35 U.S.C. § 271(b) and (c), and continues to do so with knowledge of or willful blindness to the existence of the '417 patent, with specific intent to contributorily infringe and/or induce infringement, and with knowledge or willful blindness that the induced acts would constitute patent infringement.  On information and belief, the NavioPFS system is material to practicing the invention in the claims of the '417 patent and has no substantial non-infringing uses.  The system is designed specifically to remove and process material with an effector as described in the '417 patent's claims.

45.     This infringement has occurred by Blue Belt's engaging in at least the following activities:  designing and manufacturing the NavioPFS specifically for sale and use in the United States, including Florida; selling and offering to sell the NavioPFS in the United States, including Florida; and soliciting, encouraging, and enabling infringing activity in the

13

United States, including Florida, through promotional and instructional materials and activities relating to the NavioPFS system.

46.    Blue Belt's acts of infringement of the '417 patent are being committed with knowledge of the '417 patent and its infringement.  Blue Belt received actual notice of its infringement of the '417 patent, most recently via a notice letter delivered prior to this suit being initiated.  Blue Belt nonetheless continues to contributorily infringe and/or induce the infringement of the '417 patent.

47.    Blue Belt's acts of contributory infringement and/or inducing infringement of the '417 patent have caused and will continue to cause Plaintiffs substantial and irreparable injury, for which Plaintiffs are entitled to receive injunctive relief and damages adequate to compensate Plaintiffs for such infringement.

<u>COUNT III</u>

**FALSE ADVERTISING**

**(Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B))**

48.    MAKO incorporates by reference paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49.    As set forth herein and on information and belief, Blue Belt's advertisements and marketing materials disseminated in Florida and throughout the United States are false and misleading.

50.    As set forth herein, Blue Belt's false and misleading statements have the tendency to deceive a substantial portion of the targeted audience, on information and belief, were made in bad faith, and have in fact deceived customers.

14

735339v1

51.     As set forth herein, Blue Belt's deception is material because it concerns aspects of Plaintiffs' reputation and characteristics of NavioPFS and RIO that are essential to customers' purchasing decisions.  Blue Belt's deception is thus likely to influence purchasing decisions.

52.     Blue Belt's NavioPFS is sold nationwide in interstate commerce.  Blue Belt's misrepresentations as set forth herein have been made in the course of interstate commerce and have affected interstate commerce.

53.     As a result of Blue Belt's deceptive advertisements, MAKO has suffered damages in an amount to be determined at trial.

54.     Blue Belt's false and misleading advertising in interstate commerce entitles MAKO to treble damages.

## COUNT IV

## MISLEADING ADVERTISING (Fla. Stat. § 817.41)

55.     MAKO incorporates by reference paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.     As set forth herein and on information and belief, Blue Belt's advertisements and marketing materials disseminated in Florida and throughout the United States are false and misleading.

57.     As set forth herein, Blue Belt's deception is material because it concerns aspects of Plaintiffs' reputation and characteristics of NavioPFS and RIO that are essential to customers' purchasing decisions.  Blue Belt's deception is thus likely to influence purchasing decisions.

58.     As set forth herein, Blue Belt knew or should have known of the falsity and misleading nature of its statements.

59.     As set forth herein, Blue Belt nonetheless intended that its misrepresentations would induce potential customers to rely and act on Blue Belt's statements to purchase Blue Belt's product.

60.     On information and belief, potential MAKO customers actually relied on Blue Belt's misleading statements to refuse to purchase from MAKO.

61.     Blue Belt's misrepresentations were made in bad faith with the direct intent and purpose of selling NavioPFS.

62.     Blue Belt and MAKO are direct competitors with respect to NavioPFS and RIO.

63.     As a result of Blue Belt's misleading advertisements, MAKO has suffered damages in an amount to be determined at trial.

## COUNT V

## DECEPTIVE AND UNFAIR TRADE PRACTICES (Fla. Stat. § 501.201)

64.     MAKO incorporates by reference paragraphs 1 through 63 of this Complaint as though fully set forth herein.

65.     As set forth herein and on information and belief, statements made by Blue Belt's marketing team in Florida and throughout the United States and Blue Belt's advertisements and marketing materials disseminated in Florida and throughout the United States are false and misleading.

66.     As set forth herein, Blue Belt knew or should have known of the falsity and misleading nature of its statements.

67.     As set forth herein, Blue Belt's misrepresentations are likely to mislead reasonable consumers to their detriment.

16

68.     Blue Belt's false and misleading advertising campaign, as set forth herein, constitutes an unfair trade practice in that it is a false and deceptive act in trade or commerce that offends public policy; is oppressive and unscrupulous; and is substantially injurious to consumers, the market, and the legitimate business interests of MAKO.

69.     As a result of Blue Belt's deceptive advertisements, MAKO has suffered damages in an amount to be determined at trial.

## COUNT VI

## COMMON LAW UNFAIR COMPETITION

70.     MAKO incorporates by reference paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71.     Blue Belt and MAKO are direct competitors with respect to NavioPFS and RIO. Blue Belt and MAKO compete for a common pool of customers.

72.     As set forth herein and on information and belief, statements made by Blue Belt's marketing team in Florida and throughout the United States and Blue Belt's advertisements and marketing materials disseminated in Florida and throughout the United States are false and misleading.

73.     As set forth herein, Blue Belt knew or should have known of the falsity and misleading nature of its statements.  Nevertheless, on information and belief, Blue Belt made these statements in bad faith and with malice or reckless indifference to the legitimate business interests of MAKO.

74.     As set forth herein, Blue Belt's false and misleading statements have the tendency to deceive a substantial portion of the targeted audience and, on information and belief, have in fact deceived customers and caused consumer confusion.

17

75.     As set forth herein, Blue Belt's deception is material because it concerns aspects of Plaintiffs' reputation and characteristics of NavioPFS and RIO that are essential to customers' purchasing decisions.  Blue Belt's deception is thus likely to and, on information and belief, has in fact influenced purchasing decisions.

76.     As a result of Blue Belt's deceptive advertisements, MAKO has suffered damages in an amount to be determined at trial.

**COUNT VII**

**COMMON-LAW TORTIOUS INTERFERENCE**

77.     MAKO incorporates by reference paragraphs 1 through 76 of this Complaint as though fully set forth herein.

78.     On information and belief, Blue Belt's false and misleading advertising and other false and misleading statements by Blue Belt's marketing personnel made or disseminated in Florida and throughout the United States have interfered with both actual ongoing and prospective contractual business relationships between MAKO and customers and participants in the surgical equipment market.  These actual and prospective business relationships afforded MAKO existing or prospective legal rights.

79.     On information and belief, at the time of this interference, Blue Belt knew of MAKO's actual or prospective business relationships with the targets of said interference.

80.     Blue Belt's bad faith intentional and unjustified interference with MAKO's business relationships has caused or has threatened to cause one or more of MAKO's actual or prospective customers to refuse to purchase from MAKO.

81.     As a direct and proximate result of Blue Belt's interference, MAKO has suffered damages in an amount to be determined at trial.

18

## DEMAND FOR RELIEF

PLAINTIFFS pray that this Court enter judgment in their favor on Counts I through II and against Blue Belt and grant the following relief with respect to the patent infringement claim:

A.      Enjoin Blue Belt, and its affiliates, subsidiaries, officers, directors, agents, servants, employees, representatives, licensees, successors, assigns, and all those acting for them and on their behalf, from further infringement and inducing infringement of the '417 patent;

B.      Award Plaintiffs damages resulting from Blue Belt's acts of infringement and inducement of infringement, order Blue Belt to account for and pay to Plaintiffs damages adequate to compensate Plaintiffs for the infringement of their patent rights, and award Plaintiffs their costs and pre-judgment and post-judgment interest at the highest rate allowable by law, pursuant to 35 U.S.C. § 284;

C.      As a result of Blue Belt's willful acts of infringement and inducing infringement, award Plaintiffs treble damages pursuant to 35 U.S.C. § 284;

D.      Declare this case exceptional pursuant to 35 U.S.C. § 285 and award Plaintiffs their attorneys' fees, costs, and expenses; and

E.      Grant Plaintiffs such other relief as is just and proper.

MAKO prays that this Court enter judgment in its favor on Counts III through VII and against Blue Belt and grant the following relief with respect to the claims for false advertising, misleading advertising, deceptive and unfair trade practices, and common-law unfair competition:

A.      Preliminarily and permanently enjoin Blue Belt from making false and misleading statements, as alleged herein;

19

B.      Require Blue Belt to take corrective action to remedy the damage caused by its

false and misleading statements; and

C.      Award MAKO compensatory damages, treble damages where available, an

accounting for profit, damages to pay for corrective advertising, and attorneys' fees and costs.

D.      Grant MAKO such other relief as is just and proper.


**JURY DEMAND**

Plaintiffs hereby demand trial by jury in this action of all issues and claims triable of right

by jury.


Dated:  September 2nd , 2014


Respectfully submitted,


/s/ Humberto Ocariz
Humberto H. Ocariz
HOcariz@shb.com
Florida Bar No.: 740860
Shook Hardy & Bacon LLP
Miami Center, Suite 3200
201 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Wesley Overson (*Pro hac vice*)
WOverson@mofo.com
Danielle Coleman (*Pro hac vice*)
DColeman@mofo.com
Elizabeth Patterson (*Pro hac vice*)
EPatterson@mofo.com
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

20

Wendy Ray (*Pro hac vice*)
WRay@mofo.com
Morrison & Foerster LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

Attorneys for Plaintiffs
MAKO Surgical Corp. and
All-Of-Innovation GmbH

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of September, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

<u>s/ Humberto H.Ocariz</u>
 HUMBERTO H. OCARIZ

21

735339v1

## SERVICE LIST

Humberto H. Ocariz
hocariz@shb.com
Florida Bar No.: 740860
Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156
**Shook Hardy & Bacon LLP**
Miami Center, Suite 3200
201 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

Wesley Overson (*Pro hac vice*)
WOverson@mofo.com
Danielle Coleman (*Pro hac vice*)
DColeman@mofo.com
Elizabeth Patterson (*Pro hac vice*)
EPatterson@mofo.com
**Morrison & Foerster LLP**
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Wendy Ray (*Pro hac vice*)
WRay@mofo.com
**Morrison & Foerster LLP**
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

*Attorneys for Plaintiffs*
*MAKO Surgical Corp. and*
*All-Of-Innovation GmbH*

James A. Gale
Email: jgale@feldmangale.com
Richard Guerra
Email: rguerra@feldmangale.com
**Feldman Gale LLP**
One Biscayne Tower, Suite 3000
Two South Biscayne Boulevard
Miami, FL 33131
Telephone No. (305) 358-5001
Facsimile No. (305) 358-3309

Josh Krevitt (*Pro hac vice*)
Email: jkrevitt@gibsondunn.com
**Gibson, Dunn & Crutcher LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone No. (212) 351-4000
Facsimile No. (212) 351-4035

Wayne M. Barsky (*Pro hac vice*)
Email: wbarsky@gibsondunn.com
Timothy P. Best (*Pro hac vice*)
Email: tbest@gibsondunn.com
**Gibson, Dunn & Crutcher LLP**
2029 Century Park East
Los Angeles, CA 90067
Telephone No. (310) 557-8500
Facsimile No. (310) 552-7010

Stuart M. Rosenberg (*Pro hac vice*)
Email: srosenberg@gibsondunn.com
**Gibson, Dunn & Crutcher LLP**
1881 Page Mill Road
Palo Alto, CA 94304
Telephone No. (650) 849-5300
Facsimile No. (650) 849-5333

*Counsel for Defendant Blue Belt*
*Technologies, Inc.*

22