UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:14-CV-61263-DPG/WCT

MAKO SURGICAL CORP.,
a Delaware corporation,
ALL-OF-INNOVATION GMBH,
a German corporation,

                    Plaintiffs,

          vs.

BLUE BELT TECHNOLOGIES, INC.,
a Pennsylvania corporation,

                    Defendant.

_____/

**DEFENDANT BLUE BELT TECHNOLOGIES, INC.'S ANSWER
TO PLAINTIFFS' COUNTERCLAIMS**

Defendant Blue Belt Technologies, Inc. ("Blue Belt"), for itself and no other party,

answers as follows in response to the corresponding numbered paragraphs in Plaintiff Mako

Surgical Corp.'s ("Mako") Counterclaims (Dkt. 45) (the "Counterclaims"), dated September 19,

2014, as follows:

**AS TO "PARTIES"**

1.      Blue Belt lacks knowledge or information sufficient to form a belief about the

truth of the allegations of paragraph 1 of the Counterclaims and on that basis denies the same.

2.      Blue Belt admits that it is a corporation organized and existing under the laws of

the State of Pennsylvania, with a principal place of business at 2905 Northwest Boulevard, Suite

40, Plymouth, Minnesota 55441.

## AS TO "JURISDICTION AND VENUE"

3.      Blue Belt admits that subject matter jurisdiction of Mako's Counterclaims is proper in this Court, but denies that the Counterclaims are valid or sustainable, or that Mako is entitled to any relief relating thereto.   Except as expressly admitted, Blue Belt denies the allegations of paragraph 3 of the Counterclaims.

4.      Blue Belt admits that this Court has personal jurisdiction over Blue Belt in this matter.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 4 of the Counterclaims.

5.      Blue Belt admits that the Southern District of Florida is a suitable venue for Mako's Counterclaims against Blue Belt.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 5 of the Counterclaims.

## AS TO "BACKGROUND"

6.      Blue Belt admits that it owns and has the right to enforce U.S. Patent No. 6,757,582 (the "'582 patent") and that it has the right to enforce 6,205,411 (the "'411 patent"). Except as expressly admitted, Blue Belt denies the allegations of paragraph 6 of the Counterclaims.

7.      Blue Belt admits the allegations of paragraph 7 of the Counterclaims.

8.      Blue Belt admits that Mako purports to deny that it infringes or has infringed any valid and enforceable claim of the '582 or '411 patents and "further asserts that one or more claims of the '582 and '411 patents are invalid and/or unenforceable," but denies that those allegations are valid or sustainable.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 8 of the Counterclaims.

9.      The Counterclaims omit a paragraph 9, and so no response is necessary.

10.     Blue Belt admits that there are actual controversies between Mako and Blue Belt concerning the validity, enforceability, and infringement of the '582 and '411 patents, but denies that Mako's Counterclaims are valid or sustainable.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 10 of the Counterclaims.

**FIRST COUNTERCLAIM – DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

11.     Blue Belt incorporates its foregoing responses to paragraphs 1-10 of the Counterclaims as if fully set forth herein.

12.     Blue Belt denies the allegations of paragraph 12 of the Counterclaims.

13.     Blue Belt admits that there is an actual controversy between Mako and Blue Belt concerning Mako's infringement of the '582 patent, but denies that Mako's Counterclaims are valid or sustainable.

14.     Blue Belt admits that Mako purports to seek "a declaration that it has not and does not infringe any valid and enforceable claim of the '582 patent, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents," but Blue Belt denies that Mako's Counterclaim has merit or is sustainable.

**SECOND COUNTERCLAIM – DECLARATORY JUDGMENT OF INVALIDITY**

15.     Blue Belt incorporates its foregoing responses to paragraphs 1-14 of the Counterclaims as if fully set forth herein.

16.     Blue Belt denies the allegations of paragraph 16 of the Counterclaims.

17.     Blue Belt admits that there is an actual controversy between Mako and Blue Belt concerning the validity of the '582 patent, but denies that Mako's Counterclaims are valid or sustainable.

18.     Blue Belt admits that Mako purports to seek "a declaration that each of the claims of the '582 patent" is invalid, but Blue Belt denies that Mako's Counterclaim has merit or is sustainable.

## THIRD COUNTERCLAIM – DECLARATORY JUDGMENT OF NON-INFRINGEMENT

19.     Blue Belt incorporates its foregoing responses to paragraphs 1-18 of the Counterclaims as if fully set forth herein.

20.     Blue Belt denies the allegations of paragraph 20 of the Counterclaims.

21.     Blue Belt admits that there is an actual controversy between Mako and Blue Belt concerning Mako's infringement of the '411 patent, but denies that Mako's Counterclaims are valid or sustainable.

22.     Blue Belt admits that Mako purports to seek "a declaration that it has not and does not infringe any valid and enforceable claim of the '411 patent, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents," but Blue Belt denies that Mako's Counterclaim has merit or is sustainable.

## FOURTH COUNTERCLAIM – DECLARATORY JUDGMENT OF INVALIDITY

23.     Blue Belt incorporates its foregoing responses to paragraphs 1-22 of the Counterclaims as if fully set forth herein.

24.     Blue Belt denies the allegations of paragraph 24 of the Counterclaims.

25.     Blue Belt admits that there is an actual controversy between Mako and Blue Belt concerning the validity of the '411 patent, but denies that Mako's Counterclaims are valid or sustainable.

26.     Blue Belt admits that Mako purports to seek "a declaration that each of the claims of the '411 patent" is invalid, but Blue Belt denies that Mako's Counterclaim has merit or is sustainable.

## FIFTH COUNTERCLAIM – DECLARATORY JUDGMENT OF UNENFORCEABILITY

27.     Blue Belt incorporates its foregoing responses to paragraphs 1-26 of the Counterclaims as if fully set forth herein.

28.     The second clause in paragraph 28 states a legal conclusion to which no response is required.  Blue Belt denies the remaining allegations of paragraph 28 of the Counterclaims.

29.     Blue Belt denies the allegations of paragraph 29 of the Counterclaims.

30.     Blue Belt denies the allegations of paragraph 30 of the Counterclaims.

31.     Blue Belt admits that the prosecuting attorney(s) and the inventors of the '582 patent had a duty to disclose to the PTO all information known to them to be material to patentability. Blue Belt admits that the inventors of the '582 patent signed declarations "acknowledging the duty to disclose to the United States Patent and Trademark Office all information known to me/us to be material to patentability as defined in 37 CFR 1.56." Blue Belt admits that some inventors of the '582 patent were named inventors on other U.S. patents during prosecution of the '582 patent. Blue Belt admits that no IDS forms were submitted in the prosecution of the '582 patent. Blue Belt is without knowledge or information sufficient to form a belief at this time as to the remaining allegations of paragraph 31 of the Counterclaims, and therefore denies them.

32.     Blue Belt admits that during prosecution of the '582 patent the prosecuting attorney and inventors did not submit to the PTO a journal article by Russell H. Taylor, et al.,

entitled "An Image-Directed Robotic System for Precise Orthopaedic Surgery," which on its face was apparently published in IEEE Transactions on Robotics and Automation, Volume 10, Number 3 in June 1994. Except as expressly admitted, Blue Belt denies the allegations of paragraph 32 of the Counterclaims.

33.     Blue Belt admits that during the prosecution of the '582 patent the prosecuting attorney and inventors did not submit to the PTO an article by Anthony DiGioia, III, Branislav Jamaraz, and B. Colgan entitled "Computer Assisted Orthopaedic Surgery: Image Guided and Robotic Assistive Technologies," which on its face apparently was published in the September, 1998 issue of the journal *Clinical Orthopaedics and Related Research*. Except as expressly admitted, Blue Belt denies the allegations of paragraph 33 of the Counterclaims.

34.     The first sentence of paragraph 26 states a legal conclusion to which no response is required, but Blue Belt does not admit the accuracy of the legal conclusion and reserves the right to challenge the conclusion.  Blue Belt admits that the Taylor and DiGioia articles were not listed in an IDS. Except as expressly admitted, Blue Belt denies the allegations of paragraph 34 of the Counterclaims.

35.     Blue Belt admits that the examiner cited five references as purportedly relevant to the '582 patent—U.S. Patent Nos. 4,660,573, 5,449,363, 6,097,168, 6,501,997, and 6,520,228. Except as expressly admitted, Blue Belt denies the allegations of paragraph 35 of the Counterclaims.

36.     Blue Belt admits that the examiner allowed then-pending claims 27-61 of the application that issued as the '582 patent in an office action dated October 9, 2003.  Blue Belt admits that then-pending claims 1, 2, 4-6, 9-10, 13, 16, 18-20, 24, and 62-67 were rejected in this action on the basis of anticipation by U.S. Patent No. 6,520,228; and that claims 3, 7-8, 11, 14-

15, 17, 21-23, 25-26, and 68 were objected to in this action.  Blue Belt lacks information sufficient to identify the owner of U.S. Patent No. 6,520,228.  Blue Belt denies the remaining allegations of paragraph 36 of the Counterclaims.

37.     Blue Belt denies the allegations of paragraph 37 of the Counterclaims.

38.     Blue Belt admits that the Abstract of the '582 patent reads "[a] method and system for providing control that include providing a workpiece that includes a target shape, providing a cutting tool, providing a 3-D image associated with the workpiece, identifying the target shape within the workpiece image, providing a 3-D image associated with the cutting tool, registering the workpiece with the workpiece image, registering the cutting tool with the cutting tool image, tracking at least one of the workpiece and the cutting tool, transforming the tracking data based on image coordinates to determine a relationship between the workpiece and the cutting tool, and, based on the relationship, providing a control to the cutting tool."  Except as expressly admitted, Blue Belt denies the allegations of paragraph 38 of the Counterclaims.

39.     Blue Belt admits that non-provisional U.S. Patent Application No. 10/427,093 ("the '093 application") was filed with the PTO on April 30, 2003, and issued as the '582 patent.

40.     Blue Belt admits the application for the '582 patent was apparently prosecuted by at least Kevin A. Oliver who at the time was apparently employed by the law firm Foley Hoag, LLP.  Blue Belt is without knowledge or information sufficient to form a belief at this time as to the remaining allegations of paragraph 40 of the Counterclaims, and therefore denies them.

41.     Blue belt admits the allegations of paragraph 41 of the Counterclaims.

42.     Blue Belt admits that the face of the '582 patent lists Carnegie Mellon University as the assignee. Blue Belt further admits that Carnegie Mellon University assigned the '582 patent to Blue Belt on July 8, 2014, that this assignment was recorded with the PTO on July 11,

2014, that Carnegie Mellon University retained a security interest in the '582 patent, and that Blue Belt filed a counterclaim for Mako's infringement of the '582 patent on July 10, 2014. Except as expressly admitted, Blue Belt denies the allegations of paragraph 42 of the Counterclaims.

43.     Blue Belt admits that the '582 patent claims priority to the U.S. Provisional Application No. 60/377,695, which was filed on May 3, 2002. Blue Belt admits that this provisional application expired on September 1, 2003.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 43 of the Counterclaims.

44.     Blue Belt admits that no IDS was submitted during prosecution of the '582 patent.

45.     Blue Belt admits that primary patent examiner Albert W. Paladini sent a non-final rejection of the application leading to the '582 patent with an apparent mailing date of October 9, 2003.  Blue Belt admits that the October 9 document is accurately, though incompletely, quoted. In this action, the examiner allowed then-pending claims 27-61; rejected claims 1, 2, 4-6, 9-10, 13, 16, 18-20, 24, and 62-67 on the basis of purported anticipation by U.S. Patent No. 6,520,228; and objected to claims 3, 7-8, 11, 14-15, 17, 21-23, 25-26, and 68. Blue Belt admits that the examiner cited U.S. Patent Nos. 4,660,573, 5,449,363, 6,097,168, 6,501,997, and 6,520,228 in this October 9, 2003 office action. Blue Belt denies the remaining allegations of paragraph 45.

46.     Blue Belt admits that no IDS was filed in the prosecution of the '093 application. Except as expressly admitted, Blue Belt denies the allegations of paragraph 46 of the Counterclaims.

47.     Blue Belt admits that prosecuting attorneys responded to the October 9, 2003 non-final rejection with a January 9, 2004 Response to Office Action which recited a request to amend—and proposed amendments to—claims 1, 19, 25, 28, 63, and 64; to cancel claims 7, 20,

and 21 without prejudice; and to leave claims 1-6, 8-17, 19, and 22-69 pending after entry of the amendment.  Blue Belt further admits that the Introductory Comments of this document state that "[t]he claim amendments are intended to expedite prosecution, are not related to patentability, and are presented to correct typographical and form matters," and that several pages later the Remarks state that "applicants thus traverse the Examiner's rejection of all pending claims." Blue Belt denies the remaining allegations of paragraph 47 of the Counterclaims.

48.     Blue Belt admits the allegations of paragraph 48 of the Counterclaims.

49.     Blue Belt admits that no IDS identifying prior art was submitted during the prosecution of the '582 patent. Except as expressly admitted, Blue Belt denies the allegations of paragraph 49 of the Counterclaims.

50.     Blue Belt is without knowledge or information sufficient to form a belief at this time as to the allegations of paragraph 50 of the Counterclaims, and therefore denies them.

51.     Blue Belt is without knowledge or information sufficient to form a belief at this time as to the allegations of paragraph 51 of the Counterclaims, and therefore denies them.

52.     Blue Belt admits that a query of the PTO website identifies a Kevin Oliver as having been registered as an attorney since April 28, 1998.  Except as expressly admitted, Blue Belt is without knowledge or information sufficient to form a belief at this time as to the allegations of paragraph 52 of the Counterclaims, and therefore denies them.

53.     Blue Belt admits that the file history of the '582 patent indicates that Kevin A. Oliver was an attorney associated with the firm Foley Hoag LLP.  Except as expressly admitted, Blue Belt is without knowledge or information sufficient to form a belief at this time as to the allegations of paragraph 53 of the Counterclaims, and therefore denies them.

54.     Blue Belt admits that Kevin A. Oliver did not submit an IDS during prosecution of the '582 patent.  Blue Belt is without knowledge or information sufficient to form a belief at this time as to the understanding that Mr. Oliver had as to particular matters, and therefore denies these allegations.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 54 of the Counterclaims.

55.     Blue Belt admits the allegations of paragraph 55 of the Counterclaims.

56.     Blue Belt admits the allegations of paragraph 56 of the Counterclaims.

57.     Blue Belt admits that Drs. Kanade, DiGioia, and Jaramaz are all members of the Medical Image Computing and Computer-Assisted Interventions group.  Blue Belt admits that the Medical Image Computing and Computer-Assisted Interventions publishes annual conference proceedings.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 57 of the Counterclaims.

58.     Blue Belt admits that Drs. Kanade, DiGioia, and Jaramaz each had issued patents to their names at the time the application leading to the '582 patent was filed, and thus had some experience with the patent prosecution process.  Blue Belt is without knowledge or information sufficient to form a belief at this time as to the number of patents and applications each inventor held on April 30, 2003, and therefore denies these allegations.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 58 of the Counterclaims.

59.     Blue Belt admits that during prosecution of U.S. Patent Application No. 10/876,204, which was a continuation of the '093 application which issued as the '582 patent, the prosecuting attorney submitted one or more IDS forms listing putative prior art references. Blue Belt is without knowledge or information sufficient to form a belief at this time as to the understanding that the inventors of the '582 patent had as to particular matters, and therefore

10

denies these allegations.   Except as expressly admitted, Blue Belt denies the allegations of paragraph 59 of the Counterclaims.

60.   Blue Belt is without knowledge or information sufficient to form a belief at this time as to the allegations of paragraph 60 of the Counterclaims, and therefore denies them.

61.   Blue Belt admits the allegations of paragraph 61 of the Counterclaims.

62.   Blue Belt admits the allegations of paragraph 62 of the Counterclaims.

63.   Blue Belt admits the allegations of paragraph 63 of the Counterclaims.

64.   Blue Belt admits that during prosecution of the '582 patent, each inventor signed a declaration stating that he "acknowledge[d] the duty to disclose to the United States Patent and Trademark Office all information known to me/us to be material to patentability as defined in 37 CFR 1.56."  Except as expressly admitted, Blue Belt denies the allegations of paragraph 64 of the Counterclaims.

65.   Blue Belt admits that the MPEP §2001 (8th Ed. Rev. 2) states that "[t]he duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98."  Except as expressly admitted, Blue Belt denies the allegations of paragraph 57 of the Counterclaims.

66.   Blue Belt denies the allegations of paragraph 66 of the Counterclaims.

67.   The allegations of paragraph 67 state a legal conclusion to which no response is required, but Blue Belt does not admit the accuracy of the legal conclusion and reserves the right to challenge the conclusion.

68.     Blue Belt admits that no IDS was submitted during the prosecution of the '582 patent.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 68 of the Counterclaims.

69.     Blue Belt denies the allegations of paragraph 69 of the Counterclaims.

70.     Blue Belt admits that no IDS was submitted during the prosecution of the '582 patent.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 70 of the Counterclaims.

71.     Blue Belt admits that prosecuting attorneys had filed one or more IDS forms during the prosecution of one or more patent applications naming as inventors one or more of the named inventors of the '582 patent.  Blue Belt further admits that Drs. DiGioia, Jaramaz, and Kanade are named inventors of U.S. Patent Application No. 09/189,914, and that this application issued as U.S. Patent No. 6,205,411.  Blue Belt further admits that one or more IDS forms was submitted during the prosecution of the '411 patent listing one or more patents and one or more journal articles. Except as expressly admitted, Blue Belt denies the allegations of paragraph 71 of the Counterclaims.

72.     Blue Belt admits that an IDS form filed during prosecution of the '914 application, dated as received February 9, 1999, included a listing for an article by Russell H. Taylor et al. entitled "An Image-Directed Robotic System for Precise Orthopaedic Surgery," which the IDS states was published in the IEEE Transactions on Robotics and Automation, Volume 10, Number 3 in June 1994.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 72 of the Counterclaims.

73.     Blue Belt admits that no IDS was submitted during the prosecution of the '582 patent.   Except as expressly admitted, Blue Belt denies the allegations of paragraph 73 of the Counterclaims.

74.     Blue Belt is without knowledge or information sufficient to form a belief at this time as to the access the patent examiner of the '582 patent had to any particular document, and therefore denies these allegations.   Blue Belt denies the remaining allegations of paragraph 74 of the Counterclaims.

75.     Blue Belt denies the allegations of paragraph 75 of the Counterclaims.

76.     Blue Belt admits that 37 CFR § 1.56 states that "Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim . . . ."   Except as expressly admitted, Blue Belt denies the allegations of paragraph 76 of the Counterclaims.

77.     Blue Belt denies the allegations of paragraph 77 of the Counterclaims.

78.     Blue Belt denies the allegations of paragraph 78 of the Counterclaims.

79.     The allegations of paragraph 79 state legal conclusions to which no response is required.

80.     Blue Belt denies the allegations of paragraph 80 of the Counterclaims.

81.     Blue Belt admits that the Taylor article states "positioning of a 3D CAD model of the desired prosthesis shape relative to the CT image of the patient's anatomy," "specialized IO hardware…. [that] relies on independent sensing to track the position and orientation of the robot end effector during the cutting phase of the surgery," and "that the bone does not move relative

to the fixator, which is rigidly attached to the robot's base" Blue Belt denies the remaining allegations of paragraph 81 of the Counterclaims.

82.   Blue Belt admits that the Taylor article states "[b]efore surgery, three titanium pins are implants through small skin incisions into the greater trochanter and condyles of the patient's femur."   Blue Belt denies the remaining allegations of paragraph 82 of the Counterclaims.

83.   Blue Belt admits that the Taylor article states "monitor the position of the robot's cutting tool relative to the shape that it is supposed to cut and stop cutting it is strays out of the desired volume for any reason," "detect[s] possible shifts of the bone," and "a 'freeze motion' signal is sent to the robot controller."   Blue Belt denies the remaining allegations of paragraph 83 of the Counterclaims.

84.   Blue Belt denies the allegations of paragraph 84 of the Counterclaims.

85.   Blue Belt admits that no IDS was submitted during the prosecution of the '582 patent.   Except as expressly admitted, Blue Belt denies the allegations of paragraph 85 of the Counterclaims.

86.   Blue Belt admits that Drs. DiGioia and Jaramaz co-authored an article along with Bruce Colgan entitled "Computer Assisted Orthopaedic Surgery: Image Guided and Robotic Assistive Technologies" that was published in Clinical Orthopaedics and Related Research, Number 354, 8-16 (September 1998).   Blue Belt admits that the '093 application that issued as the '582 patent was filed on April 30, 2003.   Except as expressly admitted, Blue Belt denies the remaining allegations of paragraph 86 of the Counterclaims.

87.     The allegations of paragraph 87 state legal conclusions to which no response is required.   To the extent a response is deemed required, Blue Belt denies the allegations of paragraph 87 of the Counterclaims.

88.     Blue Belt admits that no IDS was submitted during the prosecution of the '582 patent.   Except as expressly admitted, Blue Belt denies the allegations of paragraph 88 of the Counterclaims.

89.     Blue Belt is without knowledge or information sufficient to form a belief at this time as to the access the patent examiner of the '582 patent had to any particular document, and therefore denies these allegations.   Blue Belt denies the remaining allegations of paragraph 89 of the Counterclaims.

90.     Blue Belt denies the allegations of paragraph 90 of the Counterclaims.

91.     Blue Belt admits that 37 CFR § 1.56 states that "[u]nder this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim . . . ."   Except as expressly admitted, Blue Belt denies the allegations of paragraph 91 of the Counterclaims.

92.     Blue Belt denies the allegations of paragraph 92 of the Counterclaims.

93.     Blue Belt denies the allegations of paragraph 93 of the Counterclaims.

94.     The allegations of paragraph 94 state legal conclusions to which no response is required.

95.     Blue Belt denies the allegations of paragraph 95 of the Counterclaims.

96.     Blue Belt admits that the DiGioia article contains the words "any tools such as drills, reamers" and elsewhere "the cavity for the femoral portion of an uncemented hip implant

from a surgeon generated preoperative plan."   Blue Belt denies the remaining allegations of paragraph 96 of the Counterclaims.

97.   Blue Belt admits that the DiGioia article states "[t]he most common tracking devices sense position using optical cameras and infrared light emitting diodes" and "strategy is to attach tracking devices to the bones of interest and to any tools."   Blue Belt denies the remaining allegations of paragraph 97 of the Counterclaims.

98.   Blue Belt denies the allegations of paragraph 98 of the Counterclaims.

99.   Blue Belt admits that the DiGioia article states "the surgical action is physically constrained to follow a predefined strategy.   The action is guided, which means that the intervention is performed with respect to a previously defined strategy, but the final control and action still depends on the surgeon."   Blue Belt denies the remaining allegations of paragraph 99 of the Counterclaims.

100.   Blue Belt denies the allegations of paragraph 100 of the Counterclaims.

101.   Blue Belt admits that the '582 patent states "robotic orthopedic surgery systems because such systems depend on a fixed target and cannot or do not track the target."   Blue Belt admits that the DiGioia article states "know at all times where bone structures and tools are located and how they may move or change orientation during the course of a procedure," "very accurate," and "fast sensing rates of as many as 100 measurements per second, and can track multiple tools simultaneously."   Blue Belt denies the remaining allegations of paragraph 101 of the Counterclaims.

102.   Blue Belt admits that the '582 patent states "undetectable failures, since the operator may not be in full or even partial physical control of the robot."   Blue Belt admits that the DiGioia article states "the surgical action is physically constrained to follow a predefined

16

strategy.  The action is guided, which means that the intervention is performed with respect to a previously defined strategy, but the final control and action still depends on the surgeon."  Blue Belt denies the remaining allegations of paragraph 102 of the Counterclaims.

103.    Blue Belt denies the allegations of paragraph 103 of the Counterclaims.

104.    Blue Belt denies the allegations of paragraph 104 of the Counterclaims.

105.    Blue Belt denies the allegations of paragraph 105 of the Counterclaims.

106.    Blue Belt admits that the prosecuting attorney(s) and inventors of the '582 patent had duties of candor to the PTO.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 106 of the Counterclaims.

107.    Blue Belt denies the allegations of paragraph 107 of the Counterclaims.

108.    Blue Belt is without knowledge or information sufficient to form a belief at this time as to the awareness of the prosecuting attorney(s) or the inventors of particular documents at particular times, and therefore denies these allegations.  Blue Belt admits that an IDS form filed during prosecution of the '914 application, which issued as the '411 patent, included a listing for an article by Russell H. Taylor et al. entitled "An Image-Directed Robotic System for Precise Orthopaedic Surgery," which the IDS states was published in the IEEE Transactions on Robotics and Automation, Volume 10, Number 3 in June 1994.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 108 of the Counterclaims.

109.    Blue Belt admits that Dr. Kanade participated in the Engineering Research Center along with Dr. Taylor.  Blue Belt admits that Dr. Taylor is listed as an author on the 1994 Taylor article.  Blue Belt is without knowledge or information sufficient to form a belief at this time as to the remaining allegations of paragraph 109 of the Counterclaims and therefore denies them.

110.    Blue Belt admits that Dr. DiGioia has been involved with the International Society for Computer Assisted Orthopaedic Surgery, which includes as members many of the world's leading experts in computer- and robotic-assisted orthopaedic surgery.  Dr. DiGioia has been the president of CAOS, including during a period of time prior to the May 2002 filing of the provisional U.S. patent application for the '582 patent, and during at least a portion of its prosecution.  Blue Belt admits that Dr. DiGioia is knowledgeable about orthopedic robotics. Blue Belt admits that no IDS was submitted during the prosecution of the '582 patent.  Blue Belt is without knowledge or information sufficient to form a belief at this time as to the remaining allegations of paragraph 110 of the Counterclaims and therefore denies them.

111.    Blue Belt is without knowledge or information sufficient to form a belief at this time as to the awareness of the inventors of particular information at particular times, and therefore denies these allegations.  Blue Belt denies the remaining allegations of paragraph 111 of the Counterclaims.

112.    Blue Belt admits that the '093 application issued as the '582 patent and was filed on April 30, 2003.  Blue Belt admits that the Taylor and DiGioia articles were published before 2003.  Blue Belt is without knowledge or information sufficient to form a belief at this time as to the awareness of the inventors of particular information at particular times, and therefore denies these allegations.   Blue Belt denies the remaining allegations of paragraph 112 of the Counterclaims.

113.    Blue Belt admits that no IDS was submitted during the prosecution of the '582 patent.  Except as expressly admitted, Blue Belt denies the allegations of paragraph 113 of the Counterclaims.

114.    Blue Belt admits that Mako purports to seek a declaration of unenforceability concerning the '582 patent, but denies that Mako's counterclaim is valid or sustainable.

115.    Blue Belt denies any other allegation of the Counterclaims that has not been otherwise specifically admitted or responded to.

## DEMAND FOR RELIEF

Wherefore, Defendant Blue Belt Technologies, Inc. respectfully requests that this Court dismiss with prejudice Plaintiff Mako Surgical Corp.'s Counterclaims and that this Court grant such other relief as it deems appropriate.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Blue Belt hereby demands a trial by jury on all issues properly so triable.

Dated:  October 6, 2014                    Respectfully submitted,

                                           **FELDMAN GALE LLP**
                                           One Biscayne Tower, Suite 3000
                                           Two South Biscayne Boulevard
                                           Miami, FL 33131
                                           Telephone No. (305) 358-5001
                                           Facsimile No. (305) 358-3309

                                           By:  /s/ Richard Guerra
                                               James A. Gale
                                               Florida Bar No. 371726
                                               Email: jgale@feldmangale.com
                                               Richard Guerra
                                               Florida Bar No. 689521
                                               EMail: rguerra@feldmangale.com

                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           Josh Krevitt *(Admitted Pro Hac Vice)*
                                           Email: jkrevitt@gibsondunn.com
                                           200 Park Avenue
                                           New York, NY 10166-0193
                                           Telephone No. (212) 351-4000
                                           Facsimile No. (212) 351-4035

                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           Wayne M. Barsky *(Admitted Pro Hac Vice)*
                                           Email: wbarsky@gibsondunn.com
                                           Timothy P. Best *(Admitted Pro Hac Vice)*
                                           Email: tbest@gibsondunn.com
                                           2029 Century Park East
                                           Los Angeles, CA 90067
                                           Telephone No. (310) 557-8500
                                           Facsimile No. (310) 552-7010

                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           Stuart M. Rosenberg *(Admitted Pro Hac Vice)*
                                           Email: srosenberg@gibsondunn.com
                                           1881 Page Mill Road
                                           Palo Alto, CA 94304
                                           Telephone No. (650) 849-5300
                                           Facsimile No. (650) 849-5333

                                           *Counsel for Defendant Blue Belt Technologies, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on October 6, 2014, I electronically filed the foregoing document with the Clerk of the Court CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s Richard Guerra*
Richard Guerra

**SERVICE LIST**

*Mako Surgical Corp., et al. v. Blue Belt Technologies, Inc.*
**Case No.: 1:14-cv-61263-DPG/WCT**
**United States District Court, Southern District of Florida**

**Shook, Hardy & Bacon LLP**
Humberto H. Ocariz
Email:  hocariz@shb.com
Miami Center, Suite 3200
201 S. Biscayne Boulevard
Miami, FL 33131
Direct Office No.  (305) 960-6939
Office Main No.  (305) 358-5171
Facsimile No.  (305) 358-7470
*Via CM/ECF*

**Morrison & Foerster LLP**
Wendy J. Ray (*Admitted Pro Hac Vice*)
Email:  wray@mofo.com
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
Telephone No.  (213) 892-5200
Facsimile No.  (213) 892-5454
*Via CM/ECF*

**Morrison & Foerster LLP**
Wesley E. Overson (*Admitted Pro Hac Vice*)
Email:  woverson@mofo.com
Danielle Coleman (*Admitted Pro Hac Vice*)
Email:  dcoleman@mofo.com
Elizabeth A. Patterson (*Admitted Pro Hac Vice*)
Email:  epatterson@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone No.  (415) 268-7000
Facsimile No.  (415) 268-7522
*Via CM/ECF*

*Counsel for Plaintiffs*
*Mako Surgical Corp. and All-of-Innovation GmbH*